**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-1769-WJM-KLM *consolidated with*
Civil Action No. 20-cv-2120-KLM

CHURCH MUTUAL INSURANCE COMPANY,

    Plaintiff and Counterclaim-Defendant,

v.

ROCKY MOUNTAIN CHRISTIAN CHURCH,

    Defendant and Counterclaim-Plaintiff.

---

**ORDER GRANTING ROCKY MOUNTAIN CHRISTIAN CHURCH'S
MOTION TO STAY LITIGATION AND TO COMPEL APPRAISAL**

---

This insurance dispute is before the Court on Defendant and Counterclaim-Plaintiff Rocky Mountain Christian Church's ("RMCC") Motion to Stay Litigation and Compel Appraisal ("Motion"). (ECF No. 21.) For the following reasons, the Motion is granted.

**I. BACKGROUND**

On June 19, 2018, RMCC, a nonprofit corporation operating as a church, sustained covered hailstorm damage to one of its insured properties, located at 9447 Niwot Road, Longmont, CO 80503 ("Niwot Campus"). (ECF No. 21 at 2 ¶¶ 1–2.) At the time of the storm, RMCC was insured by Plaintiff and Counterclaim-Defendant Church Mutual Insurance Company ("Church Mutual") under Policy Number 0065216-02-852673 (the "Policy"). (*Id.* ¶ 2.) Church Mutual was timely notified of the loss and opened a claim pursuant to its internal procedures. (*Id.*) There is no dispute that

damage caused by hail and/or wind is covered by the Policy.  (*Id.*)  Church Mutual admitted and accepted coverage for the loss and attributed $131,772.20 to the covered damages suffered by RMCC at the Niwot Campus.  (*Id.* ¶ 3.)

Based on information provided from a local roofing company, RMCC disputed the amount Church Mutual allocated to the Niwot Campus.  (*Id.* ¶ 4.)  RMCC's experts noted significant inaccuracies in Church Mutual's assessment of the storm damages and provided an estimate of $1,672,468.62 in damages.  (*Id.* at 3 ¶ 7.)

Given the problems that had arisen with obtaining payment and an accurate assessment of the covered damages from Church Mutual, RMCC and Church mutual engaged in various efforts to settle the dispute.  (*Id.* at 3–5 ¶¶ 9–17.)  These negotiations resulted in Church Mutual advising RMCC that it was denying the remainder of RMCC's claim as to the unpaid roof damage.  (*Id.* at 5 ¶ 18.)  On June 9, 2020, RMCC timely invoked the appraisal process under the Policy.  (*Id.* ¶ 19.)

On June 16, 2020, Church Mutual filed its Complaint against RMCC, asserting claims for declaratory relief, breach of contract, breach of covenant of good faith and fair dealing, recovery/recoupment, and unjust enrichment.  (ECF No. 1.)  The Court has jurisdiction under 28 U.S.C. § 1332.  (*Id.* ¶ 9.)  RMCC answered the Complaint.  (ECF No. 28.)

On June 19, 2020, RMCC filed a lawsuit against Church Mutual in the District Court of Boulder County, Colorado, asserting claims for breach of contract, bad faith breach of insurance contract, and violation of Colorado Revised Statutes §§ 10–3–1115 and 10–3–1116.  (Civil Case No. 1:20-cv-2120-KLM, ECF No. 4.)  On July 20, 2020,

Church Mutual removed the case. (Civil Case No. 1:20-cv-2120-KLM, ECF No. 1.) The Court consolidated RMCC and Church Mutual's cases on July 27, 2020. (ECF No. 12.)

On June 26, 2020, Church Mutual rejected RMCC's request to invoke the Policy's appraisal process, stating that "Rocky Mountain Christian Church has no contractual right to demand appraisal, and Church Mutual has no contractual obligation to participate in an appraisal." (ECF No. 21 at 5 ¶ 22.) According to Church Mutual, RMCC has breached the Policy by concealing and misrepresenting material facts about its claim for benefits related to the Niwot Campus. (ECF No. 31 at 1.) Specifically, Church Mutual argues that RMCC misrepresented and concealed preexisting damage to the roof, claiming the entire roof needed replacement from the hailstorm. (*Id.*) However, according to Church Mutual, RMCC has known for over 15 years that the roof needed replacement due to age, wear and tear, construction and design defects. (*Id.* at 2.) Church Mutual contends that RMCC seized on the storm to fraudulently foist deferred maintenance costs onto Church Mutual. (*Id.*) Therefore, Church Mutual argues that because RMCC's conduct constitutes a material breach of the Policy's "concealment, misrepresentation, and fraud provision," there is no coverage under the Policy, and thus no right to appraisal. (*Id.*)

On August 10, 2020, RMCC filed the Motion. (ECF No. 21.) On August 31, 2020, Church Mutual responded in opposition (ECF No. 31), and RMCC replied (ECF No. 32). With the Court's leave (ECF No. 40), the parties filed supplemental briefs to address the fact that RMCC undertook repairs to the church's roof at the Niwot Campus even though the Motion remained pending (ECF Nos. 42, 43).

To address one of Church Mutual's arguments in opposition to the Motion, on October 21, 2020, RMCC filed its First Amended Complaint ("FAC"), asserting claims for breach of contract, bad faith breach of insurance contract, and violation of Colorado Revised Statutes §§ 10–3–1115 and 10–3–1116.  (ECF No. 39.)  Church Mutual answered the FAC.  (ECF No. 41.)

## II. LEGAL STANDARD

Because this Court's jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332(a), Colorado substantive law applies.  *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995).  Under Colorado law, questions of coverage under an insurance policy are generally matters of law reserved for the Court.  *Fire Ins. Exch. v. Bentley*, 953 P.2d 1297, 1301 (Colo. App. 1998); *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 100 F. Supp. 3d 1099, 1101 (D. Colo. 2015).  However, where the insurance contract specifically provides for a mechanism by which appraisers will determine causation and the amount of loss, the Court must enforce the terms of the contract and order an appraisal.  *Id.* at 1105 (compelling an appraisal to determine the amount of loss and causation); *Travelers Indem. Co. of Am. v. BonBeck Parker, LLC*, 223 F. Supp. 3d 1155, 1161 (D. Colo. 2016) (same); *see generally Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005) (stating that courts "construe the terms of an insurance policy to promote the intent of the parties" and must "enforce an insurance policy as written . . . .").

Indeed, "Colorado possesses a tradition of supporting alternative dispute resolution mechanisms when agreed to by the parties."  *City & County of Denver v. Dist.*

4

*Court in and for City & Cty. of Denver*, 939 P.2d 1353, 1361 (Colo. 1997).  Therefore, similar to an arbitration agreement, the court "must accord the parties a presumption in favor of appraisal and must resolve all doubts about the scope of the appraisal clause in favor of the appraisal mechanism."  *Laredo Landing Owners Ass'n v. Sequoia Ins. Co.*, 2015 WL 3619205, at *2 (D. Colo. June 10, 2015) (quoting *City & County of Denver*, 939 P.2d at 1364).

### III. ANALYSIS

First, the Court will address Church Mutual's main arguments concerning why an appraisal is inappropriate.  Then, the Court will analyze whether to stay this case during the pendency of the appraisal process.

**A.     Appraisal**

The Court concludes that invoking the Policy's appraisal procedure is proper in these circumstances.  The Policy specifically permits RMCC to seek an appraisal if there is a disagreement concerning the amount of loss.  (ECF No. 21-2.)  In relevant part, the Policy provides:

> 2. Appraisal.
>
> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the value of the property and amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding.

5

>Each party will:
>
>a. Pay its chosen appraiser; and
>
>b. Bear the other expenses of the appraisal and umpire equally.
>
>If there is an appraisal, we will still retain our right to deny the claim.

(*Id.*)  Here, it is undisputed that the parties disagree on the amount of loss suffered at the Niwot Campus.  RMCC maintains the amount of loss is $1,672,468.62, while Church Mutual estimates the covered loss at $131,772.20.  (ECF No. 21 at 5.)  The Court finds an appraisal is the proper method to resolve this dispute.

In opposing the Motion, Church Mutual first argues that appraisal is not appropriate in coverage disputes.  (ECF No. 31 at 12.)  In a case like this one, where Church Mutual disputes coverage for the entirety of RMCC's claim and not merely the value of the dispute, Church Mutual argues that the coverage dispute must be resolved first.  (*Id.* at 13.)  To do otherwise would "put the cart before the horse," and would be inefficient and unreasonable, according to Church Mutual.  (*Id.* at 12–13).

The Court disagrees.  The plain terms of the Policy's appraisal provision support compelling appraisal even when the insurer disputes coverage.  *See Magic Rabbit Car Wash & Lube Co. v. Auto-Owners Ins. Co.*, 2017 WL 7726717, at *2 (D. Colo. July 20, 2017) (citing *Allstate Ins. Co. v. Hulzar*, 52 P.3d 816, 821 (Colo. 2002) ("[I]nsurance policies are contracts, which must be construed according to their plain meaning . . . .")).  The Policy permits either party to demand an appraisal if they dispute the amount of the loss.  (*See* ECF No. 21-2.)  As RMCC argues, if Church Mutual wanted to avoid an

appraisal, it could have bargained for a provision specifically precluding an appraisal when it contests coverage or makes allegations of fraud.  (ECF No. 32 at 4.)  But Church Mutual did not bargain for such a provision.  Thus, the Policy does not support Church Mutual's contention that an appraisal is inappropriate when the insurer disputes coverage.

In addition, were the Court to adopt Church Mutual's position, it would render the appraisal provision substantially less meaningful, which in all likelihood is not a result the Defendant bargained for when it executed the Policy.  See *Magic Rabbit Car Wash*, 2017 WL 7726717, at *3 (citing *Mapes v. City Council of City of Walsenburg*, 151 P.3d 574, 577 (Colo. App. 2006) (stating that courts "should seek to give effect to all [contract] provisions so that none will be rendered meaningless. Any construction that would render any clause or provision unnecessary, contradictory, or insignificant should be avoided" (internal citations omitted))).  Taking Church Mutual's argument to its logical conclusion, an insurer could avoid the appraisal process altogether simply by arguing a coverage dispute exists.  The Court declines to adopt or approve of such a Policy construction.

Finally, it is instructive to the undersigned that other judicial officers of the District of Colorado routinely compel appraisals in cases involving coverage disputes.  *See, e.g.*, *Magic Rabbit Car Wash*, 2017 WL 7726717, at *6; *PB Prop. Holdings, LLC v. Auto-Owners Ins. Co.*, 2016 WL 9415215, at *2 (D. Colo. Oct. 19, 2016), *objections overruled*, 2017 WL 7726696 (D. Colo. Jan. 26, 2017); *Summit Park Townhome Ass'n*, 100 F. Supp. 3d 1099.

The Court also finds unavailing Church Mutual's argument that because RMCC has now replaced the Niwot Campus church's tile roof, altered its EPDM[1] roof, and otherwise discarded the physical evidence necessary to conduct an appraisal, the Motion must be denied. (ECF No. 42 at 2.) Church Mutual has submitted the Declaration of Peter Marxhausen, the professional engineer who inspected the property in question on October 4, 2020, who states that "[b]y altering, disposing, and spoliating the physical evidence, it is our opinion [RMCC] has made it impossible for an engineer or evaluator to perform [these tasks] to a reasonable degree of probability." (ECF No. 42 at 5 (citing ECF No. 42-1 (alterations in original)).) However, Church Mutual has submitted no case law supporting its argument that that it is now impossible for an engineer or construction professional to evaluate the hail damage that allegedly resulted from the storm.

By contrast, RMCC contends that the parties have numerous resources at their disposal to conduct an appraisal, including:

- "Appendix A" photo set from CMIC's engineers of the claimed damages (58 full-color photos);
- Gulf Coast Estimators' "Photo Sheet" of the subject property and claimed storm damages (consisting of 360 full-color photos);
- Roof storm damage evaluation by RMCC's roofer focusing on the portion of the roofing system which has recently been replaced (4 minutes and 45 seconds of high quality color video);
- RMCC's damage mitigation process after the subject storm (24 full-color photos);
- Stonescape Steel Roofing's photo documentation taken during the pitched tile roof replacement project (12 full-color photos);
- Photo documentation by RMCC representatives during or immediately

---

[1] This term appears to be undefined in the parties' briefs.

> after the subject storm (34 photos);
> - Photo documentation by RMCC representatives of the interior leaks present after the subject storm (32 photos); and
> - Chronological photo documentation of the current roof project (58 full-color photos).

(ECF No. 43 at 4.)

In addition, RMCC has submitted the Declaration of Richard Michelson, who is a certified insurance counselor and certified risk manager who has personally performed in excess of 200 appraisals. (ECF No. 43-4.) Michelson declares that at least 20% of the appraisals he has performed involved properties which had undertaken repairs prior to the appraisal and 7% had constructively replaced the damages in dispute. (*Id.* ¶ 3.) Based on his experience, Michelson declares that the appraisal in this case can proceed. (*Id.* ¶ 4.) In addition, RMCC submits authority (albeit from outside the Tenth Circuit) supporting the proposition that the fact that it commenced repairs of the damaged property does not constitute a waiver of its contractual right to appraisal. (ECF No. 43 at 3 (citing *Litofsky v. State Farm Lloyds*, 2017 WL 9403290, at * 3 (W.D. Tex. Nov. 13, 2017) ("State Farm has failed to satisfy its burden to demonstrate that Litofsky's actions in completing repairs to the back room evidenced her intent to relinquish her right to appraisal or was an act inconsistent with later claiming such right.")).) Under these circumstances, the Court questions the wisdom of RMCC undertaking these self-help repair efforts at this time, and it further recognizes that by doing so RMCC has likely complicated the appraisal process, possibly to a substantial degree. The Court nonetheless concludes that while undertaking the appraisal may be more difficult in light of these repairs, it is not impossible, nor is it precluded by the terms

of the Policy or the applicable case law.

The Court need not address Church Mutual's arguments that RMCC failed to plead a claim related to the appraisal clause (ECF No. 31 at 9–10) or that RMCC's conduct likely breached the misrepresentation clause (*Id.* at 10–12). The Court has reviewed these arguments and finds them insufficient to change its conclusion that appraisal is appropriate.

## B.     Stay of Proceedings

The Court must next decide whether to grant a stay of proceedings pending the completion of the appraisal process. In determining whether a stay of proceedings is warranted, courts consider, (1) the plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *See String Cheese Incident, LLC v. Stylus Shows, Inc.*, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006). The Court has given the parties' arguments regarding whether a stay is warranted due consideration and finds that for the following reasons, a stay is appropriate.

Given that the appraisal will determine two principle issues in this case—causation and the amount of loss—an appraisal could substantially limit the need for further discovery and motions practice. Moreover, because Church Mutual agreed to the appraisal process in the Policy, the Court does not find the burden on Church Mutual to be significant. Regarding the fourth and fifth factors, the Court does not perceive a substantial impact on the interests of persons not parties to this litigation or

the public interest in general. Therefore, the Court stays this litigation while the parties participate in the appraisal process.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant and Counterclaim-Plaintiff Rocky Mountain Christian Church's Motion to Stay Litigation and Compel Appraisal (ECF No. 21) is GRANTED;

2. This case is STAYED pending the completion of the appraisal process; and

3. The Clerk of Court shall ADMINISTRATIVELY CLOSE this case and Civil Action No. 20-cv-2120-KLM subject to reopening upon good cause shown **after** the appraisal procedure outlined in the Policy has been fully completed.

Dated this 19th day of March, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge